[No. 3890.]

## Ross v. Nichols et al.

1. Parties—*Indispensable Not Joined—Waiver of Objection.* Defendants making no objection to the non-joinder of an indispensable party, the defect will be overlooked where it appears that no injustice will result.

2. Mortgage—*Foreclosure Sale—Effect.* On the expiration of the period of redemption allowed by the statute (Rev. Stat., sec. 3657) without redemption made, all right of the mortgagor in the premises is extinguished.

3. Mortgagor and Mortgagee—*Contract Between Construed.* The holder of a certificate of purchase under a mortgage sale from which no redemption was made within the statutory period entered into an agreement with the mortgagor to convey the lands to him, upon certain conditions. The contract construed and held to be, as upon its face it imported, a contract of sale; and, not being in any part performed, it was held to confer no right.

*Error to Arapahoe District Court.* Hon. Charles McCall, Judge.

Mr. John R. Smith, for plaintiff in error.

Messrs. Ritter & Marshall, for defendants in error.

Morgan, Judge.

Writ of error to the Arapahoe district court, to reverse a judgment in favor of the defendants in an action, commenced March 23, 1908, by the plaintiff in the nature of a creditors' bill, asking for determination and declaration as to the interest of defendant, Nichols, in and to the property involved; and asking that the plaintiff be allowed to pay off all claims of the other defendants upon the property, and thereafter to hold the same and subject it to the lien of his two judgments against the defendant, Nichols, the docket entry of which had been filed as required by law, on March 16, 1908.

The evidence discloses, chronologically, that:

Prior to any of the dates involved herein, Nichols owned the property subject to a mortgage to L. R. Bergeron for $11,800.00.

On February 23, 1905, the property was sold to Bergeron for $13,000.00 at sheriff's sale on the foreclosure of his mortgage and a certificate of purchase issued.

On April 14, 1905, Nichols gave a deed of trust to the defendant, Marshall, trustee, to secure $3,500.00 due to the Central Savings Bank.

On May 25, 1905, Nichols gave a quit-claim deed to Marshall which it is admitted was to operate as a mortgage in connection with the deed of trust aforesaid, both subject to the Bergeron mortgage.

In February, 1908, about which date the bank had purchased and had assigned to it the Bergeron certificate, Nichols made a contract to sell the property to a man named Carper for $80,000.00, which contract is referred to in the written contract involved in this case, which follows.

On February 28, 1908, a written contract was made between The Central Savings Bank and Trust Company, successor to The Central Savings Bank, and the owner of the certificate aforesaid, and Nichols, whereby the trust company agreed to sell and convey the property to him including some other property, Nichols agreeing to pay for the same $18,792.79, but permitting the trust company to retain a one-fourth interest if he paid the entire amount on or before January 1, 1909, otherwise the trust company was to retain a one-third interest, thus contracting to purchase a three-quarter or two-third interest, as the case might be, Nichols to pay all taxes and assessments and insurance and forfeit all payments made if he failed to make any payment on or before the time it fell due, or within six months thereafter, and to hold possession of the property, during the life of the contract. Appellant contends this contract reveals and con-

fers upon Nichols an interest that can be reached and determined in this suit, and then subjected to the lien of his judgments.

On March 16, 1908, the plaintiff, Ross, having prior to that time recovered the two judgments against Nichols filed transcripts of the docket entry thereof with the recorder, both judgments amounting to about $3,000.00.

On March 23, 1908, Ross brought this suit for the purpose of having Nichols' interest in the property determined, so that he might thereafter subject it to the effect of the judgment liens, on the theory that the entire indebtedness of Nichols to the trust company including the amount paid for the Bergeron certificate, were merged and the contract became and was a mortgage on Nichols' property in favor of the trust company.

On April 11, 1908, the trust company took a sheriff's deed upon its certificate of purchase and put it on record.

Willis M. Marshall was president of the bank, and afterwards, of its successor, the trust company, but was not sued as president of either, nor was the bank or the trust company made a party to this suit. The Carper contract was not introduced, and no further facts elicited concerning it.

The foregoing facts are all either admitted in the pleadings, or else appear in the written contract, or in the undisputed testimony of S. E. Marshall, as no other evidence was presented.

It plainly appears that the trust company would not be affected by any decree that might be entered in this suit; and it further appears from the written contract and Marshall's testimony that the trust company's interest is antagonistic to the interest of the plaintiff, and would have to be determined before the plaintiff could either pay the money he asks to be permitted to pay, or before he could subject the property to lien of his judg-

ments. The trust company was an indispensable party. However, as the defendants do not directly question plaintiff's right to have the matters determined without the appearance of the trust company, and as the facts would in all probability have been the same if it had been a party, no harm will be done by affirming the judgment on the following grounds.

All right and title of Nichols was lost on the expiration of his right to redeem from the Bergeron foreclosure, and all of the bank's, or Marshall's, or the trust company's rights under the deed of trust and the quit claim deed, were foreclosed and extinguished thereby; therefore, the trust company being entitled to a deed on the · Bergeron certificate, Nichols had no interest when the judgment liens were filed, unless it arose by and through his contract with the trust company; and this was nothing more than an inchoate right depending upon his performance, or such partial performance, as would give him an indefeasible interest. It is not shown by the evidence that any part of this contract had been performed by him that might not be thereafter forfeited by his failure to perform the remainder under the terms of the contract.

It seems clear under the authorities that the trust company, as the holder of the certificate of purchase in this case, and being entitled to a sheriff's deed at the time this suit was commenced, had the right to sell the property to Nichols, or to anyone else, and that its contract with him amounted to nothing more than a contract of sale of the property to him, and that if this be true he would have no interest in the property that could be caught by the plaintiff's judgment liens.—*Roose v. Gove,* 32 Colo., 522, 77 Pac., 246. Marshall's testimony was very positive that the contract with Nichols was, as it shows on its face, a contract of sale, and not intended as a mortgage; and, as his testimony was not contradicted,

it seems impossible to hold that the contract was a mortgage, or intended as such.

And as to any interest Nichols might have had, *as a purchaser* of the property under the contract, assuming that his rights had not been forfeited by default in the payments, such right, if any, cannot be determined without the other party to that contract, the trust company, be made a party to the suit.

*Judgment Affirmed.*